Mr. Ross. May I begin, Your Honor? Yes, please. Thank you very much. Several issues have been raised in this case with regard to the exceptional circumstances and whether or not a motion to reopen is appropriate in this matter. In the instant case, it is clear that you really have what you called one of the notario cases. You have an individual who was represented by a person who held himself out as a lawyer, told him he was going to represent him in a deportation proceeding, and proceeded not only to not represent him, but cause him to miss a hearing which subsequently culminated in his arrest and rescission of permanent residency, which he had obtained believing that he was eligible for permanent residency. The government has suggested that there is no exceptional circumstance here and has asked the court that even in the event that the court finds that there should be some sort of issue with regard to exceptional circumstance, the case should be remanded for further inquiry by the board. Let me address that issue and also the issue as to whether or not the court has jurisdiction over the rescission proceeding which was raised by opposing counsel on October 10th in a letter to the court. Isn't this the case where the man didn't want his representative to file a phony claim of Iranian asylum for political reasons? That's correct. Mainly because he wasn't Iranian. That's correct. He was Armenian, and said, I don't want you to go forward with that. The so-called representative showed up at the hearing, and the man was denied asylum in absentia. Then he went merrily on his way, thinking that everything was taken care of, married somebody else, got an adjustment of status, started a bakery, and was arrested. That is exactly the case. The issue is whether on his motion to reopen, the period of time between the time that he thought everything was taken care of and the time he moved to reopen should be told for equitable considerations. Where do you get the exceptional circumstances requirement? Is that what you think is necessary for equitable tolling? No. No, I'm just saying that those are the issues that were raised by It's a textual thing I'm inquiring about. Exceptional circumstances usually invokes in our minds a cancellation of removal. That's not in this case. No. Not at all. What you're talking about is whether there are equitable grounds upon which to toll the period of time, the 180 days mentioned by Judge Bright in the last case, in which to make a motion to reopen. The government says no. You say yes. Exactly. What are the equitable circumstances? Several. Number one, the fact that you have what would be considered to be ineffective assistance of counsel, but it's much more egregious than ineffective assistance of counsel. It's total fraud. He thought he was represented by an attorney. Not only did he think he was represented by an attorney, but he was told that certain things would be done. Representations were made to him, including that the hearing, since he did not want to go forward with a phony application, that the hearing would be terminated and there would be no application. And that is the government takes the position that at the 926-1997 hearing, he was represented by counsel, and that counsel should have notified him of the effect of the hearing, and that he didn't exercise due diligence in finding out what happened at the hearing. How do you answer that? First of all, he was not represented by counsel. There is no signed document in the file, and in any case in which representation is suggested or stated, there has to be a signed EOIR-28 given to an attorney who then presents it to the court. The record shows that there is no signed EOIR-28, that the attorney, whoever it is, and this is the interesting thing in this case. How do we know it was an attorney? We don't even know it was an attorney. We know that somebody appeared on his behalf, allegedly. And the I.J. circled represented. Exactly. And the I.J. doesn't even know who the representative is. The record is not clear as to who actually appeared that day. The record does not reflect who appeared, and the government concedes that they don't know who actually appeared on his behalf that day. He never signed anything. He never delegated authority to any individual to represent him. All he knew is he thought he was being represented by a gentleman by the name of Mr. Arzu, who he thought was a lawyer and who told him, the case will be canceled, it will be finished, and you don't have to worry anymore. So therefore, he never really had representation, per se, to the point that rose to the level where he had to file, for example, a bar complaint because he didn't even know who it was that he'd have to file against. He did file against Mr. Arzu, and it turned out that Mr. Arzu was not a lawyer. Could I just go back to the procedural issue for a minute? To get the rescission of an in absentia removal order, which is what is at issue here, I understand, you have to show both the equitable tolling of the 180 days and demonstrate exceptional circumstances. And the BIA, in its decision, didn't reach the exceptional circumstances because it didn't find the grounds for equitable tolling. That's correct. Now, are you saying that the test for both equitable tolling and exceptional circumstances is essentially the same, it's ineffective assistance of counsel, and so the BIA's determination that the Lusada requirements were not met is applicable to both of those issues? Yes. It's intertwined. It's almost like where you have an argument where you say, does the court have jurisdiction, and you have to get to the merits of the case to determine if there's jurisdiction. It's the same thing here. In order to get to the merits of the equitable tolling, you have to actually look to the facts of the underlying cause, which in this case is the exceptional circumstances. So in response to your question, the answer is yes. The BIA, by not finding equitable tolling in effect, ruled that there were not exceptional circumstances. That is correct. Why didn't he comply with the Lusada requirements? Well, he did with regard to Mr. Arzu, but he didn't know who appeared in the hearing because there's no record in the hearing as to who was the actual lawyer. So you can't file a Lusada until you know who you have to file against. I would also just remind the Court that there is a case called Lee v. Ashcroft. I can't remember the actual site, but it's a seminal case in Lusada in which the Court concluded that if it's obvious that there was misconduct or ineffective assistance of counsel, it's not necessary to adhere to the Lusada requirements because the whole purpose of Lusada was to prevent fraud, to prevent somebody from making a claim of ineffective assistance of counsel when there really wasn't ineffective assistance of counsel. If it's a glaring act, which everybody recognizes is improper, then you don't even need to comply with Lusada. That's Lee v. Ashcroft. So what you want is a remand to the Board of Immigration Appeal to determine whether there were grounds for equitable tolling and whether there were exceptional circumstances for reopening. Well, optimally, what I'd really like is for the Court to say that there were and order that the case be reopened and send it back. We can't find ab initio that there were exceptional circumstances if the BIA never got to that point. Our position is, Your Honor, by not finding equitable tolling, they effectively found that there were not exceptional circumstances. Our second wish would be, of course, that it be remanded back to the Board for further consideration. They didn't allow equitable tolling. Is that right? That's correct. So actually, if you're going to get any relief, we have to say that under the record here, equitable tolling applies, and the Board has to toll us. Is that what you're saying? That's correct. Is there any discussion? Can we just say there's some other factors you didn't consider and reconsider equitable tolling? Is that within our purview? From a technical point, yes, it is. You could certainly conclude that the Board didn't consider certain information and would have to go back and look at the record, but effectively, if you send it back to the Board, what you're really saying is that there is equitable tolling. There was no adverse credibility finding here. No. There being no adverse credibility finding, the Board should believe what Mr. Manassian says about Mr. Arzu and that he was defrauded by Mr. Arzu. We would hope so, certainly. One of the things you better explain to me is how come it took five years for the petitioner to find out he was not eligible to stay in the country? Excellent question. I don't want that. It is. It's the crux of the case. And the answer is that after he was told that the hearing was taken care of, he went about his merry business. He ended up marrying a U.S. citizen with whom he has two children. He applied for adjustment of status with the Immigration Service, who fingerprinted him, who examined his records, and concluded that he was eligible for adjustment and gave him a green card. It wasn't until several years later that a knock on his door came and he was notified by Immigration. He had a green card in the meantime. Is that what you're saying? Sure. He had a green card. And then he gets a knock on the door later on. Can I ask you this? Do you agree with the government's October 12th letter that because the order of rescission of his adjustment is not a final order of removal, this court has no jurisdiction? No. Why? Because there are two cases that came after the Waziri case. I believe that's the case. She cites — let me just see if it's correct. Yeah, Waziri. There are two cases, Baria v. Reno, 94, Fed 3rd, 1335. It's a 1996 Ninth Circuit case. And there's also another case, Bachelier, B-A-C-H-E-L-I-E-R v. INS, 625, Fed 2nd, 902. It's a Ninth Circuit 1980 case. And both cases say that if the rescission is brought in a deportation proceeding — It's the basis of the deportation order. They say if it's the grounds for the deportation order. This one is not the grounds for the deportation order. In fact, it came after, right? It is. But if you read these two cases, you'll see that the court really doesn't distinguish between that. What the court really says in these two cases, especially in Bachelier, the court says that whenever the rescission lies at the base of an order or is in some way connected to a deportation or removal order, that rescission becomes reviewable by the court. Now, if we look at the facts of this case, why was there a rescission? There was a rescission because there was an order based on the fact that he had not appeared. And the rescission was based on that order saying that he wasn't entitled to residency because he was under the jurisdiction of the immigration court. So those are intertwined. And if you read those two cases, they pretty much take Waziri one step further and say that if rescission is handled in the context of trying to remove an alien from the country, there's reviewability by the court. I think that counsel for the government raised an interesting issue, and I did take time to look at it, and it certainly was. Kennedy. I'm sorry? Kennedy. I will certainly do that. I will do that. And I reserve rebuttal time. Thank you very much. You're overdrawn as it is. Ms. Walsh. Good morning, Your Honors. Good morning. May it please the Court, Kelly Walsh for the respondent, the Attorney General. Mr. Minnesian made two defaults in his immigration proceedings. He failed to appear at a September 26, 1997 hearing, and he failed to timely file a motion to reopen. It is the second default that is before the Court today. Mr. Minnesian failed to develop an adequate factual record to show that ineffective assistance of counsel should toll the 180-day deadline for his motion to reopen. It's not ineffective assistance of counsel. He says the bounder wasn't an attorney. That means yes, Your Honor. However, if we look at the cause of his failure to timely file the motion to reopen, as the Board pointed out, it was not Mr. Arzu's failure to, quote, cancel the proceedings, but Attorney Scheno's failure to notify Mr. Minnesian of the entry. Just stepping back for a moment, is there any case supporting the use of the Lozada standard in the context of equitable tolling? Because the equitable tolling cases do not require a showing of ineffective assistance of counsel, per se. No, Your Honor. Your Honor, you're correct. I could not find a case in which they required per se a matter of Lozada to be complied with. But as the Board recognized, this Court has required a separate and independent analysis of equitable tolling on one hand and ineffective assistance of counsel on the other. However, the separate analysis does not relieve the Petitioner from developing an adequate factual record to show that the deadline should be tolled due to ineffective assistance of counsel. But didn't the BIA use the wrong test in looking at equitable tolling? Isn't the test related to fraud in Varela? The standards that were laid out in Varela? I think that this Court has actually expanded it and said it need not necessarily be fraud. For example, if an attorney failed to notify the alien of the date he needed to appear, well, that wouldn't be fraud. It would be ineffective assistance. So. I'm confused by your reference to Attorney Scheno. You say it was Attorney Scheno's failure to advise Minassian about the action of I.J. on 92697? Yes, Your Honor. Well, where's any evidence that Scheno appeared for him? I'd like to take that in two parts. First, although it was in the rescission order. Say again? I'm sorry. In the rescission proceedings. In the rescission. Yes. That's later. It is, but I. No, no, no. Concentrate on this. My understanding, and correct me if I'm wrong, my understanding is that on 92697, they had an asylum hearing. Yes, Your Honor. Mr. Minassian says that he'd gotten wind that Arzu was portraying him as an Iranian rather than an Armenian, and he thought that was a phony. He had nothing to do with it, and he told Arzu, scrub it. Arzu said he would. So Minassian didn't show up. Somebody showed up. Some representative. We don't know who. Actually, Your Honor, we do. How do we know? Because in the rescission transcript, Mr. Minassian's second attorney, Attorney Farzud, I believe, I'm not sure on the pronunciation, was informed by the Department of Homeland Security trial attorney that it was in fact Attorney Scheno who appeared. That's on page 83 of the record in the rescission proceedings. So the way we establish that Scheno appeared at the September 26, 1997 hearing is a statement by a government attorney at the rescission hearing five years later. I know it's not the most perfect evidence that we could ask for. Not under oath. Not a subject of cross-examination. And without any foundation that that declarant was present at the hearing five years before and can state, based on personal observation, that it was Scheno who was there. Where is the foundation for that statement? You're correct, Your Honor. There is no foundation. However So can we just say objection sustained? Sure. We can say objection sustained. But I would like to point out that Attorney Scheno did enter a notice of appearance as attorney of record. And contrary to opposing counsel's argument, it did not need to be signed by Mr. Minnesian. Where is the evidence that Scheno entered an appearance as attorney of record on the hearing of 92697? That's what I would like to find out. He actually entered it on the first hearing on June 16, 1997. That's at page 96 of the record in the removal proceedings. And as I was saying, that does not need to be signed by Mr. Minnesian, because he is not asserting he is a citizen of the United States, nor that he was a lawful permanent resident. All right. Scheno makes an appearance, ER 96, at the hearing 61697. Yes. There's no adverse credibility finding here, so we have to believe what Minnesian says. Minnesian says, I told Arzu, scrub the hearing. I'm not going to go. Right? Yes. So the fact that Scheno appears on the first pretrial hearing, how does that prove that he or she, I don't know if she knows a man or woman, appears on the second hearing? Even if he didn't appear. He was the attorney. I guess you're conceding he didn't appear. I'll concede that somebody appeared and we're not positive. Was there any attorney present at the second hearing at September 26? Somebody was present. Somebody. Somebody off the street? Maybe a TV reporter, right? Yes, Your Honor. We'll go with that, that it was somebody. If that's conceded, how can they say he's not diligent in following up because he would have gotten notice from his attorney of the action at the in absentia hearing? Because Attorney Scheno, as the attorney of record in the immigration proceedings, had a duty to tell Mr. Minnesian that an in absentia order had been issued, regardless of whether he was actually present at the September 27th or 26th hearing. How do you know that Scheno was still employed? We have three months plus, and we have the testimony uncontested, without an adverse credibility, by Minnesian that he has said scrub the whole proceeding. Scrub the whole proceeding means the attorney is going to take a walk also. However, the attorney would have had to file a notice to withdraw from the hearing. That would have been required. And if he or she didn't, still has the obligation to find it. Well, maybe it's an effective assistance of counsel that she didn't or he didn't know. Well, that's exactly the board's point, is that if anything, it appears Attorney Scheno was ineffective in failing to notify Mr. Minnesian, because as the attorney of record, he did not fulfill his duties and obligations. And so what you say is if that is the basis for equitable tolling, then the Lozada requirements have not been found. Exactly. We don't have an adequate factual record. We don't know that Attorney Scheno was ever notified of what happened in this case. We don't know that he didn't contact Mr. Minnesian. There just isn't enough evidence on the record with regard to Attorney Scheno to find that he was ineffective and that the deadline should be tolled. Well, this was what Sheehan did was well beyond the 180 days. And so, you know, if the petitioner had been notified instead of having been fraudulently advised, he could have had a motion to reopen, which he was entitled to as a matter of law. Now his only chance is equitable tolling. And the equitable tolling goes back to the first incident when Arzu said everything is taken care of. Isn't that so? Yes, Your Honor. But I think part of the reason he did not pursue the whether or not his removal proceedings were canceled was because he decided to use a different name and a different A number, get married to a United States citizen, and then adjust his status. He figured he was home free at that point. Are you saying, what do you mean a different name? The asylum application was filed in the name of, I believe. Well, yeah, but that was the asylum application which he issued by saying, I'm not an Iranian, I'm an Armenian, I don't want anything to do with it. So he took steps to make it clear that he didn't use that name. That was the name used by Arzu. Well, except that he did appear at the asylum hearing in front of the asylum officer and signed the name, Miros Martiros. The first one. Yes. Then he found out what was going on according to him, and we have to believe him, because no adverse credibility hearing. And then he withdrew that, right? Yes. Well, he didn't withdraw. So it's not quite right to say he's using a different name and a different. He's always used the same name. It's Arzu who gave him a different name. Except that from the view of the immigration court, he does have two names and two A numbers. So when he did adjust his status under the name Minnesian with a different A number, there was no way for them to know this was the same person who filed the asylum application and had the removal order, which in a way explains why Mr. Minnesian had no, you know, did not inquire as to what happened with the asylum application in the ultimate in absentia order, because he was fine. Let me just ask you one other question. Sure. You know, equitable has sort of a meaning of justice or fairness, and we have to take the assertions, I think, of the petitioner on its face. Don't you think, you don't have to answer this, but isn't this a case where one could say, and I'm not saying it, that there really is an injustice and unfairness here, and equitable tolling is available? I'm not saying it isn't. But if it's an unjust case, we should consider equitable tolling, don't you think so? I think that there does appear that there was some injustice. In fact, Mr. Minnesian had four attorneys after Mr. Arzu and Attorney Scheno represented him, yet none of them ever sought to file a complaint against Attorney Scheno, who Mr. Minnesian himself believed was Mr. Arzu's superior. He believed Mr. Arzu was Attorney Scheno's assistant. No one has gone forward to Attorney Scheno to try to find out what exactly happened here. And it is that absence of a factual record that made it impossible for the Board to find that equitable tolling did apply. If I may briefly address the rescission order, as I suggested in my motion, or my 28J letter to the Court, the government believes that the Court is without jurisdiction to review that order. However, I would suggest that if the Court does find jurisdiction, that the Mr. Minnesian's rescission of his permanent resident status was proper as a matter of law, because the moment he was served with a notice to appear under the other name, any adjudication of his adjustment application had to be done before the immigration judge. So it was the district director's lack of jurisdiction over Mr. Minnesian's application for adjustment of status that required the rescission. And this was merely a procedural way to clean up the problem created by the two names and two A numbers. Kagan. If the – if this Court has jurisdiction to reach that issue because of the connection between the final order of deportative removal and this, is there any other jurisdictional bar? In other words, is that a under 1252 that would prevent us from reaching that decision? I don't believe so. If you did find it to be so connected. However, as I said, it was not the – his status was not rescinded because he had an order of removal entered against him, as much as as soon as he was put into removal  Therefore, the adjustment was improper due to lack of jurisdiction at the onset of that application process. The order of rescission was improper? No, no, no. The adjustment – the adjustment of his status was improper because he was under immigration proceedings at the time. Yes. And the jurisdiction to – for his adjustment would have vested with the immigration court. All right. Thank you very much. Thank you. Do you want – do you comment at all? Well, that's all right. Pardon me. Mr. – pardon me, counsel, for the appellant. It's being overdrawn is okay. Just one comment, and that is that the rescission itself, if the court finds that this case does involve equitable tolling, it means that Mr. Manassian believed that the case was terminated. If an immigration case is terminated, jurisdiction then returns back to the immigration service, not the judge. But even assuming the court decides that ultimately this case should be reopened, Mr. Manassian is entitled to just renew his residency in front of the immigration judge. In other words, the judge could have granted him residency and could have done it even nunk-bro-tunk. So that is – that is certainly an option in this case. All right. Thank you very much. Thank you. We'll – the Court will stand in recess for the next 10 minutes. Thank you.
judges: Bright , Bea & Ikuta